## Case No. 10,207.

### NEW YORK LIFE INS. & TRUST CO. v. COWPERTHWAITE et al.

[Betts' Scr. Bk. 31.]

District Court, S. D. New York. 1841.

NEGOTIABLE INSTRUMENTS—COLLATERAL SECURITY —PRINCIPAL AND SURETIES.

[Where, at the time of making a loan, the borrower passes to the lender, along with his own note, certain notes made by third parties, and payable to the borrower, these latter notes, even if intended merely as collateral security, must be regarded as valid and operative paper against the makers, although, as between them and the borrower, there was no consideration; and they cannot protect themselves as sureties unless they have, by positive notice, brought home to the lender the fact that the paper was only to be used as security, and that there was no consideration for it.]

This was an action on a promissory note for $5,000, made by the defendants to the order of Warren Kimball, and endorsed by him to the plaintiffs [H. Cowperthwaite and George W. Lord]. The defence set up was, that the defendants were sureties only, and as such were, under the circumstances of the case, exempt from payment.

The following are the circumstances of the case as they appeared in evidence: In January, 1837, Warren Kimball negotiated with the plaintiffs for a loan of $10,000 on his own notes, endorsed by Bailey, Keeler & Remsen, and when getting the money, or immediately after, Kimball also gave the plaintiffs two notes made by the defendants, as collateral security to his own notes, one of which notes, or rather a renewal of it, was the note now in suit. When Kimball's notes became due, he paid a part of them, and got a renewal for the remainder, and also got the defendants' notes renewed. When Kimball's notes became due a second time, he again got a renewal of them, and also got a renewal of the defendants' notes for their full original amount, although he had paid part of the debt for which these notes were collateral security. When Kimball's notes

became due a third time, he again got a renewal of them, but the plaintiffs did not again ask him to renew the notes of the defendants, but held them over, after they fell due, without giving the defendant any notice until after Kimball had suspended payment.

For the defence it was contended, that from the circumstances of the case, the plaintiffs must have known, or inferred, that Kimball had given the defendants no consideration for the notes, and that the plaintiffs had made the loan on Kimball's own notes only, and took the defendants' notes as collateral security. And that had the plaintiffs, before they gave the last renewal to Kimball, informed the defendants of it, or demanded payment of their notes, the defendants could have sued Kimball and recovered the amount of their accommodation to him, as he was then in solvent circumstances. But instead of doing so, the plaintiffs had given him an extension of time, without the consent or knowledge of defendants, and by doing so they had exonerated the defendants from their liability as sureties.

For the plaintiffs it was contended, that the defendants could not exempt themselves on the ground of being sureties, unless they could prove that they had given notice of it to the plaintiffs.

Mr. Betts, for plaintiffs.

Mr. Ketchum, for defendants.

BETTS, District Judge (charging jury). In a commercial community like ours, it is always important that questions arising in relation to commercial paper, should be settled on such clear, definite and distinct principles, that they may be a guide for practical men in their business affairs. In the present case, the defence set up is, that the parties executed these papers merely as securities, and are to be considered but as sureties, and that as the plaintiffs did not proceed with that due diligence on the original debt which the law demands, they have lost their claim on the defendants.

The question thence arises, are the defendants to be held but as sureties? As respects Kimball, they are sureties, as between Kimball and the defendants no consideration was given for this note. But as regards the plaintiffs, they are either sureties or principals, and this proposition presents the question which you are now to consider. Mr. Kimball was the only witness in the case, and on his evidence there may be a doubt whether he dealt with the company, to have his own notes discounted, and that afterwards he should leave with them the notes of Cowperthwaite & Lord, as collaterals, or that he dealt with the company, on the understanding that they lent him the money on the notes of both parties. If it was on both notes, then Kimball's own notes were no more discounted than the notes of defend-

ants. It was in that case a loan on both the notes together, and either party could with equal propriety be called principals or collaterals. And if the money was thus advanced on their notes, the holders of them could enforce payment on them. If when the money was advanced, it was understood that it was alike on the notes of Bailey, Keeler & Remsen and Cowperthwaite & Lord, then it was an original undertaking on the part of the defendants, and they are bound for the debt.

There is some little uncertainty upon the proofs as to the real character of the transaction. It appears at one time that Kimball was to have the discount on his own notes, and that he gave these notes as collateral security. But a further examination gave ground for belief that he received his loan on the foundation of both papers. If you find that it was a loan on both notes unitedly, then there is no question as to the nature of the security. It was an original undertaking. But if you find that it was a collateral security, then applies the question of law, are the defendants entitled to claim to themselves the privileges and immunities of sureties only? I think the rule of law settles that question, for although, as between Kimball and Cowperthwaite & Lord, they are but sureties, they cannot protect themselves, on that ground, against other persons who take the paper, unless they can bring home to such holder positive notice that they were only sureties in the transaction. If several persons sign a note as obligors, all but one, as between themselves, may be but sureties. Yet, if there is a loan given on the whole note, no claim to exemption as sureties can be maintained, unless they notify the parties taking the paper that they were but sureties. And they must establish their right to exemption as sureties, by proving positive notice to the parties holding the paper. This relieves the question from all speculation or implication as to what the plaintiffs might have reasonably inferred, or understood respecting the origin and consideration of the note in question. It must be regarded as a valid operative paper against the defendants, at the time it was passed to the plaintiffs, inasmuch as no direct and positive notice was given them that it was intended only as security by the defendants and was given without consideration to them. You will therefore say, was the loan originally made on the paper of Kimball, and not on the paper of Cowperthwaite & Lord? If you find that this paper was received as collateral security, you must still find for the plaintiffs, on the ground that they had no direct notice that the parties were sureties only. If the court is under any error as to this point of law, it will be corrected on a review of the case, when moved by the defendants.

The jury found a verdict for the plaintiffs for $6,011, and 6 cents costs; and they further found that the loan was made upon Warren Kimball's note, with Cowperthwaite & Lord's notes as collateral securities.

NEW YORK LIFE INS. & TRUST CO. (UNITED STATES v.). See Case No. 15,873.

NEW YORK LIFE INS. CO. (DAVIS v.). See Case No. 3,644.

NEW YORK LIFE INS. CO. (DUTTON v.). See Case No. 4,211.

NEW YORK LIFE INS. CO. (ENSWORTH v.). See Case No. 4,496.

NEW YORK LIFE INS. CO. (HANCOCK v.). See Case No. 6,011.

NEW YORK LIFE INS. CO. (MOREY v.). See Case No. 9,795.

NEW YORK LIFE INS. CO. (OWEN v.). See Case No. 10,631.